UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AUTUMN R. SHALLENBERGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:19-cv-00900 |
| | ) | |
| CORECIVIC - TROUSDALE TURNER | ) | JUDGE RICHARDSON |
| CORRECTIONAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Autumn Shallenberger, a Tennessee resident, filed a *pro se* Complaint for employment discrimination against CoreCivic - Trousdale Turner Correctional Center under Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act. (Doc. No. 1.) Plaintiff has also filed an application to proceed in this Court without prepaying fees and costs. (Doc. No. 5.) Both are now before the Court.

**I. APPLICATION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). While Plaintiff has provided certain imprecise information about her income history, the Court is able to conclude that Plaintiff has been unemployed for at least a year, she relies on a small disability income that is far exceeded by monthly expenses, and she has very few available resources. (See Doc. No. 5.) Because it appears from Plaintiff's *in forma pauperis* application that she cannot pay the full $400.00 filing fee in advance, the application will be granted.

## II. INITIAL REVIEW

The Court must conduct an initial review of the Complaint and dismiss any action filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (holding the screening procedure established by § 1915(e) also applies to *in forma pauperis* complaints filed by non-prisoners), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

1. STANDARD OF REVIEW

In reviewing the Complaint, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The Court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level," *Twombly*, 550 U.S. at 555. The Court "need not accept as true legal conclusions or unwarranted factual inferences," *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice," *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this

lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" and the responsibility of the court "does not encompass advising litigants as to what legal theories they should pursue").

2. <u>FACTUAL ALLEGATIONS</u>

Liberally construing the Complaint and drawing the necessary reasonable inferences, the Court has identified the following factual allegations. At the time of the events alleged in the Complaint, Plaintiff was employed at Trousdale Turner Correctional Center ("TTCC"). On December 7, 2016, she returned to work from vacation and found her office "torn apart" and her radio missing. (Doc. No. 1 at 7.) Plaintiff learned that her office had been searched by prison officials after a co-worker had reported Plaintiff for having cell phones. (*Id*. at 8.)

Inspector Mendenhall and Sergeant Peterson interviewed Plaintiff about the radio, and she confirmed it was hers. (*Id*.) Plaintiff explained that she had asked for permission to have the radio, and that the radio had been imaged and searched by security. (*Id*.) Mendenhall informed Plaintiff the radio was contraband regardless of her explanation. (*Id*.) He further stated that prison officials needed to search Plaintiff's car for contraband. (*Id*.) Plaintiff resisted this search and contended that nothing in her car could be prison contraband. (*Id*.) While Mendenhall conceded that Plaintiff "could say no," Plaintiff agreed to the search because she did not want to look guilty. (*Id*.)

Plaintiff informed the officers that the only prison-related items in her car were birthday cards signed by inmates in her pod. (*Id*.) One of the cards was signed "love you know who." (*Id*.) Plaintiff had written an incident report on "regular paper" concerning the card from "you know

3

who," and she had planned on submitting the correct form as she had in the past with other "inappropriate letters and phone calls." (*Id*.) Prison officials informed Plaintiff that she could not have the cards. (*Id*.) While Plaintiff did not understand the reasons, she explained that this was her first job in corrections and apologized for the mistake. (*Id*.) Mendenhall and Peterson said further reporting regarding the cards was not necessary, and that Plaintiff was being investigated only for maliciously bringing the contraband radio into the prison. (*Id*. at 8-9.) Plaintiff stated that she believed an incident report was necessary, but they "brushed her off." (*Id*. at 9.)

Once back inside the prison, Plaintiff was given paperwork placing her on "non-disciplinary administrative paid leave." (*Id*.) She was told she would be "fine" if she told the truth about the radio. (*Id*.) Plaintiff became extremely upset and had a panic attack because she believed "people never come back from leave." (*Id*.) She was escorted out and her badge was taken. (*Id*.)

On December 30, 2016, Plaintiff was called to the prison to meet with Peaches Poole and Warden Leibach. (*Id*.) They informed Plaintiff that she was receiving a "PSN writeup." (*Id*.) Plaintiff believed she would be fine because she had no prior disciplinary record. (*Id*.) However, Warden Leibach then informed Plaintiff that he was going to uphold the recommendation of Chief Veal, a senior supervisor, that Plaintiff be terminated for violating the ethics code of conduct. (*Id*.) When Plaintiff questioned how having a radio violated the ethics code of conduct, Warden Leibach stated that he knew nothing about a radio and Plaintiff was being investigated for a birthday card. (*Id*.) Plaintiff explained that she had followed protocol with the incident statement about the card, but was told to include that information in her grievance and appeal. (*Id*. at 9-10.) Plaintiff asserted that she had done nothing wrong and that this would not be an issue if she was a male. (*Id*. at 10.) She explained to Warden Leibach that she is not the only white female who has been terminated "for what should be a write up or a verbal warning." (*Id*.) Plaintiff believes that at least five other

4

females with no disciplinary history have also been terminated while male counterparts with the same charges return to work with the maximum punishment of a demotion. (Id. at 11.) Plaintiff was told getting a lawyer "wasn't necessary" and that she should "calm down" before writing a grievance or appeal. (*Id*. at 10.)

After her termination, Plaintiff asked for the return of personal items from her office. (*Id*.) However, she was only given a small portion. (*Id*.) Warden Leibach told Plaintiff "that was everything," and that she could email him regarding other items. (*Id*.) Plaintiff did so, and returned to TTCC three times, but officials have still not returned all of her property. (*Id*.) Plaintiff also alleges that human resources attempted to not pay her for the last week of December, claiming her termination date was December 23. (*Id*.) Although Plaintiff proved she was entitled to pay through December 30, she was still denied holiday pay and told to file a grievance. (*Id*. at 10-11.)

Plaintiff was told that the appeal of her termination would be heard multiple different times, but it had still not occurred as of February 5, 2019. (*Id*.) She did, however, receive separation paperwork in the mail. (*Id*. at 11.) Since that time, Plaintiff has had other job offers, but they have been rescinded after the prospective employers contacted CoreCivic for a reference. (*Id*.) Plaintiff "wanted to be part of the solution," and had been willing to overlook many alleged legal and ethical lapses at TTCC, but she believes "they cannot treat people this way." (*Id*.)

3. DISCUSSION

The Complaint reflects that Plaintiff intends to bring several employment law claims against "CoreCivic – Trousdale Turner Correctional Center." (*Id*. at 4.) As an initial matter, "CoreCivic is the private entity contracted to manage [the] TTCC."[1] *Plemons v. CoreCivic Admin.*

---

[1] "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b)). The Tennessee Department of Correction website reflects that CoreCivic is a private entity that manages the TTCC. *See*

5

*Headquarters*, No. 3:18-cv-00498, 2018 WL 4094816, at *3 & n. 1 (M.D. Tenn. Aug. 28, 2018). The TTCC, on the other hand, is just "a building." *Id*. The proper Defendant in this matter is therefore "CoreCivic." The Clerk will be directed to modify the docket to reflect this change.

Before reviewing the merits of Plaintiff's claims, the Court first addresses the timeliness of the Complaint. A plaintiff must file a civil lawsuit within 90 days of receiving a right-to-sue notice from the Equal Employment Opportunity Commission ("EEOC") that reflects the exhaustion of administrative remedies. *See Fuller v. Mich. Dep't of Transp.*, 580 F. App'x 416, 424 (6th Cir. 2014) (citing 42 U.S.C. § 2000e-5(f)(1)) (discussing the 90-day requirement in the context of Title VII). There is a presumption that a plaintiff "receives the EEOC's [right-to-sue] letter by the fifth day after the indicated mailing date." *Id*. (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000)). Here, the EEOC right-to-sue notice is dated August 2, 2019, so the Court presumes Plaintiff received it on August 7, 2019. The Court received the Complaint on October 11, 2019, 65 days later. (Doc. No. 1 at 1.) Accordingly, the Court considers Plaintiff's claims to be timely for the purpose of initial review.

Turning to the merits, Plaintiff checked boxes reflecting that she intends to bring this action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act ("THRA"). (Doc. No. 1 at 3.) She also checked the boxes reflecting that the "discriminatory conduct of which [she] complain[s]" includes termination of her employment and retaliation. (Id. at 4.) Finally, Plaintiff checked boxes reflecting that Defendant discriminated against her based on her gender/sex – specifically, "being female." (*Id.*)

---

Trousdale Turner Correctional Center, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/trousdale-turner-correctional-center (last visited Feb. 19, 2020).

Title VII and the THRA make it unlawful for an employer to discharge an employee because of her sex.[2] 42 U.S.C. § 2000e-2(a)(1). To state Title VII and THRA claims for discrimination on the basis of sex, Plaintiff must allege plausible facts that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004) (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). However, Plaintiff need not establish all elements of a *prima facie* case of discrimination at this stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). So long as the Complaint "provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012).

To state Title VII and THRA retaliation claims, Plaintiff must allege plausible facts that: (1) she engaged in protected conduct under Title VII; (2) CoreCivic had knowledge of this protected activity; (3) CoreCivic thereafter took an employment action adverse to the Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (Title VII retaliation); *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 434 (Tenn. Ct. App. 2015) (THRA retaliation). Protected conduct includes "oppos[ing] any practice made an unlawful employment practice by [Title VII]," or "ma[king] a charge, testif[ying], assist[ing] or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 28 U.S.C. § 2000e–3(a).

---

[2] Title VII and the THRA claims are both analyzed under Title VII's standards. *Armstrong v. Tenn. Educ. Lottery Corp.*, 219 F. Supp. 3d 708, 714 & n. 1 (M.D. Tenn. 2016) (citing *Parker v. Warren Cty. Utility Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999) (recognizing the Tennessee legislature intended the THRA "to be coextensive with federal law")).

Liberally construing the factual allegations set forth above and taking them as true, as required at this stage in the proceedings, the Court concludes that Plaintiff has stated Title VII and THRA claims sufficient to survive initial review. Regarding discrimination, Plaintiff plausibly alleges that she is female, she was terminated, she was (at least impliedly) qualified for her position, and she was treated differently from similarly-situated male CoreCivic employees at TTCC. While Plaintiff's retaliation claims are a closer question, the Court also finds it is inappropriate to dismiss them at this preliminary stage of the case. Plaintiff has claimed retaliation since the filing of her EEOC charge in 2016. While the Complaint does not clearly allege retaliatory motives for Plaintiff's termination, Plaintiff complains of several potentially retaliatory actions that occurred after her complaints of discrimination were made to Warden Leibach on the day of the termination, including the withholding of pay and refusal to hold an appeal hearing. For this claim to survive in later stages of this case, however, Plaintiff must establish that she was retaliated against for engaging in a protected activity under Title VII.

### III. CONCLUSION

For the reasons explained above, Plaintiff's *in forma pauperis* application (Doc. No. 2) will be granted. The Court concludes that Plaintiff has stated non-frivolous Title VII and THRA claims against Defendant CoreCivic, and these claims shall proceed.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE